## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 31 2017, 11:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Glen E. Koch, II
Boren Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:

M.O. (Minor Child),

and,

B.T. (Father) and R.O. (Mother),
*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

October 31, 2017

Court of Appeals Case No.
55A05-1705-JT-1209

Appeal from the Morgan Circuit Court

The Honorable Matthew G. Hanson, Judge

Trial Court Cause No.
55C01-1610-JT-484

**Barnes, Judge.**

# Case Summary

B.T. ("Father") and R.O. ("Mother") appeal the termination of their parental rights to M.O. We affirm.

# Issue

Father and Mother raise several issues, which we consolidate and restate as whether the evidence is sufficient to support the termination of their parental rights.

# Facts

M.O. was born to Father and Mother in August 2013. The Department of Child Services ("DCS") became involved with the family because Mother and M.O.'s meconium tested positive for THC and opiates at the time of M.O.'s birth. The trial court approved an Informal Adjustment, but Mother disappeared, leaving M.O. in the care of maternal grandmother, and failed to comply with the safety plan. In December 2013, DCS filed a petition alleging that M.O. was a child in need of services ("CHINS"). M.O. was placed with her maternal grandmother, who also has guardianship of Father and Mother's older child. Father and Mother failed to appear at a hearing on the CHINS matter, and the trial court found M.O. to be a CHINS. The trial court entered a dispositional order that required Father and Mother in part to maintain contact with the family case manager, obtain and maintain suitable housing, obtain and maintain a legal and stable source of income, avoid illegal drug usage,

participate in home-based counseling, complete a substance abuse assessment and follow all treatment recommendations, submit to random drug screens, and attend all scheduled visitations with M.O.

[4] Mother's compliance with services was "inconsistent." Tr. p. 86. Mother admitted that she mainly used heroin and marijuana, but she had also used methamphetamine and opana. In March 2015, Mother was arrested for possession of a narcotic drug. She was released in July 2015, but she was arrested again in August 2015 for a probation violation. Mother was sent to Crossroads Christian Recovery Center in October 2015. Mother completed the program and moved into Victory House for an aftercare program. In the summer of 2016, Mother was asked to leave Victory House for smoking cigarettes. Although Mother started outpatient substance abuse treatment, she only showed up for four of ten appointments. In October 2016, Mother overdosed and had to be revived with Narcan. In November 2016, Mother and Father were arrested for stealing a car and fleeing from the police. Although Mother was referred for individual therapy, addiction skills, a substance abuse parenting group, and peer support after her release from jail in March 2017, she failed to comply. Overall, Mother minimally complied with services. Although Mother regularly visited with M.O., she had more of an aunt/niece relationship with her than a parental relationship. At the time of the termination hearing, Mother was living with her father and was unemployed. Although she had obtained employment at a fast food restaurant, she quit the job a couple of weeks before the hearing.

[5] During the case, Father visited with M.O. only a "handful of times." Tr. p. 30. Father admits that he has spent the majority of M.O.'s life incarcerated and has not bonded with M.O. Father was incarcerated in February 2014 and was released in June 2014. Although Father arranged substance abuse treatment, he missed the appointment and tested positive for heroin. He was referred for IOP services, but he failed to appear. Father violated his probation and was placed back in jail. He was released in May 2015. He contacted DCS in March 2016 and requested to participate in counseling and therapy classes. In April 2016, Father was arrested on a theft charge. He was eventually ordered to serve 180 days in jail. Father was released in August 2016, but he started using heroin again. He was arrested with Mother in November 2016 for stealing a car and fleeing from the police. At the time of the termination hearing, Father was still incarcerated. He testified that, if he pled guilty, he would be out of jail in December 2017, but that, if he went to trial, he could receive a five-year sentence.

[6] In October 2016, DCS filed a petition to terminate Father's and Mother's parental rights. After a hearing in May 2017, the trial court entered findings of fact and conclusions thereon terminating Father's and Mother's parental rights to M.O. Father and Mother now appeal.

## Analysis

[7] Father and Mother challenge the termination of their parental rights to M.O. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re*

*I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). "Indeed the parent-child relationship is 'one of the most valued relationships in our culture.'" *Id.* (quoting *Neal v. DeKalb County Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). We recognize, of course, that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.'" *Id.* (quoting *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

[8] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *Id.* We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)). Here, the trial court entered findings of fact and conclusions thereon in granting DCS's petition to terminate Father's and Mother's parental rights. When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly

erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[9] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (B)    that one (1) of the following is true:
>
> > (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C)    that termination is in the best interests of the child; and
>
> (D)    that there is a satisfactory plan for the care and treatment of the child.

DCS must establish these allegations by clear and convincing evidence. *Egly v. Blackford County Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1234 (Ind. 1992).

## *I. Changed Conditions*

[10] Both Father and Mother challenge the trial court's finding of a reasonable probability that the conditions resulting in M.O.'s removal or that the reasons for placement outside the home of the parents will not be remedied.[1] In making this determination, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. However, the trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.*

---

[1] Father and Mother also argue the trial court's conclusion that the continuation of the parent-child relationship poses a threat to M.O.'s well-being is clearly erroneous. Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive. Subsection (b)(2)(B)(iii), which concerns repeated CHINS adjudications, is inapplicable here. Consequently, DCS was required to demonstrate by clear and convincing evidence a reasonable probability that either: (1) the conditions that resulted in M.O.'s removal or the reasons for placement outside the home of the parents will not be remedied, or (2) the continuation of the parent-child relationship poses a threat to the well-being of M.O. The trial court found a reasonable probability that the conditions that resulted in M.O.'s removal and continued placement outside Father's and Mother's homes would not be remedied, and there is sufficient evidence in the record to support the trial court's conclusion. Thus, we need not determine whether there was a reasonable probability that the continuation of the parent-child relationship poses a threat to M.O.'s well-being. *See, e.g., Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143, 148 n.5 (Ind. 2005); *In re T.F.*, 743 N.E.2d 766, 774 (Ind. Ct. App. 2001), *trans. denied*.

[11]    Mother argues that she has engaged in services, attended a drug rehab program, had stable housing, and obtained employment. She contends that her drug addiction is improving. Although Mother had periods of improvement since M.O. was removed from her care in 2013, Mother relapsed many times. She relapsed a few months before the termination hearing and has not started services again to deal with her drug addiction. Despite several years of services and opportunities to remedy the issues that resulted in M.O.'s removal, Mother continues to struggle with her drug addiction. The trial court found that Mother "is basically exactly where she was when this case started." Appellant's App. Vol. II p. 21. This finding is supported by the evidence. The trial court's finding that there is a reasonable probability that the conditions that resulted in M.O.'s removal and the reasons for placement outside Mother's home will not be remedied is not clearly erroneous.

[12]    As for Father, he argues that he has not had an adequate opportunity to engage in services because of his incarceration. Father has been incarcerated for much of the time since M.O.'s removal in 2013. Even when not incarcerated, his participation in services has been minimal. The trial court found that Father has "repeated the pattern time and again of being released from jail, doing drugs or committing crimes and going back to jail." *Id.* The trial court found that Father had "done nothing to better himself since this case started." *Id.* These findings are supported by the evidence. The trial court's finding that there is a reasonable probability that the conditions that resulted in M.O.'s

removal and the reasons for placement outside Father's home will not be remedied is not clearly erroneous.

## II. Best Interests

[13] Father and Mother challenge the trial court's finding that termination of their parental rights is in M.O.'s best interests. In determining what is in the best interests of a child, the trial court is required to look at the totality of the evidence. *D.D.*, 804 N.E.2d at 267. In doing so, the trial court must subordinate the interests of the parents to those of the child involved. *Id.*

[14] Both the family case manager and the court-appointed special advocate testified that termination is in M.O.'s best interests. M.O. is bonded with her grandmother, who is also caring for M.O.'s older sister. M.O. has lived with her grandmother since she was three months old.

[15] Mother argues that she has a strong bond with M.O. and that she has taken steps to remedy her substance abuse and obtain stable housing and employment. However, the evidence showed that M.O.'s relationship with Mother is more like an aunt/niece relationship. Mother is still struggling with her significant drug addiction, is living with her father, and recently quit her job at a fast food restaurant.

[16] Father argues that his incarceration was due to be remedied soon and that he had not been offered the opportunity to address his substance abuse issues. However, at the time of the hearing, Father's charges were still pending, and the length of his incarceration was uncertain. Because he had been incarcerated

for most of the time since M.O.'s removal in 2013, he had no relationship or bond with M.O. In fact, he had only seen M.O. a "handful" of times since her removal. Tr. p. 30. Even when not incarcerated, Father made minimal effort to participate in services.

[17] The trial court "easily" found that "it has been proven by clear and convincing evidence that termination is in the best interests of the child." Appellant's App. Vol. II p. 22. We conclude that the trial court's finding is not clearly erroneous.

## Conclusion

[18] The evidence is sufficient to support the termination of Father's and Mother's parental rights to M.O. We affirm.

[19] Affirmed.

May, J., and Bradford, J., concur.